IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH L. LEVESQUE,

        Petitioner,               No. CIV S-09-0205 GEB EFB P

    vs.

MIKE KNOWLES,

        Respondent.        <u>FINDINGS & RECOMMENDATIONS</u>

_____/

       Petitioner, a state prisoner proceeding through counsel, filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. He challenges the April 4, 2007 decision by the Board of Parole Hearings ("Board") to deny him parole. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.[1]

////

---

   [1] Petitioner also moves to supplement the petition with information pertaining to his current medical condition. In light of the information provided, the court ordered that resolution of this action would be expedited. May 5, 2009 Order. However, petitioner's *current* medical condition is irrelevant to the question of whether "some evidence" supports the Board's 2007 decision. Therefore, and as respondent argues in his opposition brief, petitioner's proposed supplemental petition "does not support a claim that the state courts unreasonably applied clearly established federal law." Resp.'s Opp'n to Pet'rs Mot. to Suppl. Pet. at 1. Accordingly, the motion to supplement the petition should be denied.

PROCEDURAL BACKGROUND

On January 13, 1994, petitioner was convicted of lewd and lascivious conduct with a minor under the age of fourteen (Cal. Penal Code § 288(a)) and annoying or molesting a child under the age of eighteen (Cal. Penal Code § 647.6). Pet. at 2. The trial court also found allegations of a prior section 288(a) conviction, and prior convictions for rape and burglary to be true. *Id.* at second page[2] 6. Petitioner was sentenced to a total state prison term of sixteen years and four months to life with the possibility of parole. *Id.* at 2.

Petitioner's minimum parole eligibility date was August 19, 2001. *Id.* at second page 6. The Board denied parole at his initial suitability hearing in 2001, and again in 2003, and 2005. *Id.* at second page 6, Exs. A, B, C. On April 4, 2007, the Board again found petitioner unsuitable for parole. *Id.* at 7, Ex. D.

Petitioner challenged the Board's April 4, 2007 decision in a petition for writ of habeas corpus filed in the Alameda County Superior Court. *Id.* at 8. That petition was denied in a reasoned decision. *Id.* Ex. E. The Superior Court concluded that "[s]ome evidence supports the Board's conclusion that Petitioner currently poses an unreasonable risk of danger to society if released." *Id.* Ex. E at 5. Petitioner subsequently filed habeas petitions in the California Court of Appeal and the California Supreme Court, which were summarily denied. *Id.* at 8, Exs. F, G.

Petitioner's federal habeas petition was received for filing by this court on January 20, 2009.

////

////

////

////

---

[2] Petitioner filed a pre-printed form petition numbered pages two through six. He attached to that form petition, a typed brief that is also titled "petition," and numbered pages one through 23. The references in these findings and recommendations to "second page" refer to the pages in the latter document.

2

# FACTUAL BACKGROUND[3]

In August of 1992, [petitioner] went on a picnic with J.J., age 12, Rosalia, age 9, their mother and their stepfather.  Kerlett, age 7, and her parents also joined them.  The four parents eventually left the children with [petitioner].

[Petitioner] drove the children to an ice cream parlor.  While they were there, Kerlett looked underneath the table and saw that [petitioner]'s penis was exposed underneath his shorts.  She told Rosalia who also looked and saw it.  J.J. noticed it as well.

[Petitioner] then took the children to a pet store where he bought goldfish for J.J.  After the pet store, [petitioner] took the children to his home.  [Petitioner] telephoned Kerlett's mother, telling her that the kids would be home in half an hour.

At first all three of the children went to the weight room.  J.J. began using the weights.  [Petitioner] left the room, and the two girls followed soon thereafter.  Rosalia testified that [petitioner] turned on a "nasty movie" and said, "Look."  Kerlett did not remember the video.  When J.J. joined them in the living room a few seconds later he saw that a Playboy movie was being played on the video cassette recorder (VCR).  He tried to turn it off.  He told Rosalia and Kerlett to go outside because he didn't think they should watch the movie, and announced that they were all going to leave.  J.J. pulled Rosalia outside and got into [petitioner]'s car.  Kerlett soon followed.  [Petitioner] did not come out.  Kerlett persuaded J.J. and Rosalia to return to the house so that they could play with [petitioner]'s video camera.

While J.J. was taking his turn with the video camera, [petitioner] called to get J.J.'s attention.  When J.J. turned the camera towards [petitioner] he saw that [petitioner] had pulled down his pants and underwear and was displaying his bare buttocks.  J.J. described it as "mooning."  A few seconds later [petitioner] called for J.J.'s attention again.  This time [petitioner] had Kerlett over his knees, and her pants were down displaying her bare buttocks.  Rosalia saw [petitioner] place Kerlett over his knees and pull down Kerlett's pants.  Kerlett also testified that [petitioner] "grabbed me and put me over his legs and took down my pants."  When J.J. saw this he put down the camera, and told both girls to come with him.  Kerlett jumped up and pulled her pants up, and they went outside.  J.J. said to [petitioner] "take us home or we're going to walk."  On the way home in the car [petitioner] warned the children not to say anything to their parents or they wouldn't be allowed to visit again.

*Id.* Ex. L (*People v. Levesque*, 35 Cal.App.4th 530, 535-36 (1995)).

////

---

[3]  The following summary is drawn from the May 30, 1995 opinion by the California Court of Appeal for the First Appellate District, Division One.  These facts are also reproduced in the petition at pages 17 and 18.

DISCUSSION

I.    <u>Standards of Review Applicable to Habeas Corpus Claims</u>

Pursuant to 28 U.S.C. § 2254, a person in custody under a state court judgment may apply for a writ of habeas corpus "on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because petitioner filed his application for a writ after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d) (referenced herein as § 2254(d) or AEDPA); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

Under the "contrary to" clause of § 2254(d)(1), a writ may be granted if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that are materially indistinguishable from a decision' of the Supreme Court and nevertheless arrives at a different result." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06). Under the "unreasonable application" clause, a writ may be granted if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the last reasoned state court decision addressing the merits of the petitioner's claim. *Robinson v. Ignacio*, 360 F.3d

4

1044, 1055 (9th Cir. 2004). Here, the last reasoned rejection of petitioner's claims was the March 20, 2008 decision of the Alameda County Superior Court affirming the Board's decision. Therefore, this court will analyze whether the March 20, 2008 reasoned state judgment was erroneous under the standard of § 2254(d).

II.     Petitioner's Claims

Petitioner seeks federal habeas corpus relief from the Board's April 4, 2007 decision finding him not suitable for parole. Petitioner has appeared before the Board four times, including the April 2007 hearing, without being granted parole. At the time of his April 2007 hearing, petitioner had served 13 years of his 16 years and four months sentence. Pet'rs Reply at 15. Petitioner claims the following as grounds for habeas relief: (1) the psychological report relied upon by the Board was inaccurate and unprofessional, Pet. at 15-16; (2) the Board's denial of parole based on petitioner's alleged need for therapy, which is unavailable to petitioner while confined, violates due process, equal protection and the Eighth Amendment, *id.* at 14; Pet'rs P. & A. in Supp. of Pet. ("P. & A.") at 11-15; (3) petitioner's prior offenses and social instability are insufficient to warrant denial of parole, P. & A. at 18-20; and (4) the Board violated his due process rights by failing to consider all relevant information, including petitioner's medical condition and existing statutory safeguards that protect public safety. Pet. at 14; P. & A. at 16-18.

A.     Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United

States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 12 (1979)).

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; *see also In re Lawrence*, 44 Cal.4th 1181, 1204, 1210, 1221 (2008). Accordingly, this court must examine whether California provided the constitutionally-required procedural safeguards when depriving petitioner of a protected liberty interest and, if not, whether the Alameda County Superior Court's conclusion that it did was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the Board's decision is not supported by "'some evidence in the record,' or is 'otherwise arbitrary.'" *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)).[4] "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Cato v. Rushen*, 974 F.2d 1132, 1134 (9th Cir. 1992). Determining whether the "some evidence"

---

[4] Respondent denies that petitioner has a federally protected liberty interest in parole and that the "some evidence" test is "clearly established" federal law in the parole context. Resp.'s Ans. at 2. These arguments, however, have been consistently rejected by the Ninth Circuit. *Irons*, 505 F.3d at 850-51; *Sass*, 461 F.3d 1128-29; *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 903, 904.

standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint*, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. *Id.*

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851. This court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in *Hill*.

*Id.*

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but [] become eligible for parole consideration after serving minimum terms of confinement." *In re Dannenberg*, 34 Cal.4th 1061, 1078 (2005). The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." *In re Lawrence*, 44 Cal.4th at 1202 (citing Cal. Penal Code § 3041(a)). A release date *must* be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b) (emphasis added).

In order to carry out the mandate of section 3041, the Board must determine "whether the inmate poses '*an unreasonable risk of danger to society if released from prison*,' and thus whether he or she is suitable for parole." *In re Lawrence*, 44 Cal.4th at 1202 (citing Cal. Code Regs. tit. 15, § 2281(a)) (emphasis added). In doing so, the Board must consider all relevant,

reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281(b); *see also id.* § 2432(b) ("At all parole consideration hearings for sex offenders the panel shall consider the information described in Section 2281(b).").

The regulation identifies circumstances that tend to show suitability or unsuitability for release. *Id.* § 2281(c) & (d); *see also id.* § 2432(c) & (d). The following circumstances tend to show that a prisoner is suitable for release: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release. *Id.* § 2281(d); *see also id.* § 2432(d) .

The following circumstances tend to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison. *Id.* § 2281(c); *see also id.* § 2432(c). Factors to consider in deciding whether the prisoner's

offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. *Id.* § 2281(c)(1)(A)- (E); *see also id.* § 2432(c).

In California, the overriding concern in determining parole suitability is public safety and the focus is on the inmate's *current* dangerousness. *In re Dannenberg*, 34 Cal.4th at 1086; *In re Lawrence*, 44 Cal.4th at 1205. The California Supreme Court recently stated:

> [T]he Penal Code and corresponding regulations establish that the fundamental consideration in parole decisions is public safety [and] the core determination of "public safety" . . . involves an assessment of an inmate's *current* dangerousness. . . . [A] parole release decision authorizes the Board (and the Governor) to identify and weigh only the factors relevant to predicting "whether the inmate will be able to live in society without committing additional antisocial acts." These factors are designed to guide an assessment of the inmate's threat to society, *if released*, and hence could not logically relate to anything but the threat *currently* posed by the inmate.

*In re Lawrence*, 44 Cal.4th at 1205-06 (internal citations omitted). Accordingly, in reviewing a decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *Id.* at 1212 (citing *In re Rosenkrantz*, 29 Cal.4th at 658; *In re Dannenberg*, 34 Cal.4th at 1071; *In re Lee*, 143 Cal.App.4th 1400, 1408 (2006)).

Additionally, in recent years the Ninth Circuit Court of Appeals has explained that, given the liberty interest that California prisoners have in release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole over time can constitute a violation of due process. The court has addressed the issue in three significant cases, each of which will be discussed below.

First, in *Biggs*, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could at some point result in a due process violation.[5]  While the court in *Biggs* rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy.  *Biggs*, 334 F.3d at 913.  However, the court in *Biggs* cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process.  In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.  Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

*Id.* at 916.  The court in *Biggs* also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  *Id.* at 917.

In *Sass*, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses.  461 F.3d at 1126.  Citing *Biggs*, the petitioner in *Sass* contended that reliance on these unchanging factors violated due process.  The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination.  *Id.* at 1129.  The court provided the following explanation for its holding:

---

[5]  That holding has been acknowledged as representing the law of the circuit.  *Irons*, 505 F.3d at 853; *Sass*, 461 F.3d at 1129.

While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." *Biggs*, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. *Cf. id.* The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

*Id.*

In *Irons,* the Ninth Circuit sought to harmonize the holdings in *Biggs* and *Sass*, stating as follows:

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in *Sass* precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in *Biggs*, *Sass*, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. *Biggs*, 334 F.3d at 912; *Sass*, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in *Sass* and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. *Biggs*, 334 F.3d at 917.

*Irons*, 505 F.3d at 853-54.[6]

---

[6] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. *In re Lawrence*, 44 Cal.4th at 1218-20 & n. 20.

B.    Analysis

The last reasoned rejection of petitioner's claim is the decision of the Alameda County Superior Court affirming the Board's April 4, 2007 decision.  Accordingly, this court will review that opinion to determine whether "some evidence" supports the court's conclusion and the Board's findings that petitioner is unsuitable for parole because he is *currently* dangerous. *In re Lawrence*, 44 Cal.4th at 1191.  For the reasons explained below, the court finds that there is "some evidence" in the record to support the finding of the Board that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released, and this evidence has sufficient indicia of reliability.

In denying parole, the Board relied upon a negative psychological report, the circumstances of the commitment offense, and petitioner's prior offenses and unstable social history.  First, the Board found petitioner unsuitable for parole because Dr. Jatinder Singh's psychological report indicated "a longer period of observation and evaluation [is] required before the Board can find that [petitioner is] suitable for parole."  Pet., Ex. D at 87.  The superior court also concluded that the psychological report supports the finding that petitioner poses an unreasonable risk to society if released on parole.  *Id.* Ex E at 5.  There was ample evidence for these findings.

The report, based on Dr. Singh's February 7, 2007 evaluation of petitioner, indicates that petitioner's risk of committing another sexual offense is high and that his risk of future sexual violence is high.  *Id.* Ex. J at 1, 8.  The report also notes that petitioner "continues to view himself as much a victim of his crimes as those he has perpetrated against" and the fact that petitioner's

---

Additionally, a recent panel of the Ninth Circuit in *Hayward v. Marshall*, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the Governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  *Hayward v. Marshall*, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in *Hayward* is no longer precedent.

account of his prior sexual offenses differs significantly from the official report "should be viewed with caution." *Id.* Ex. J at 2, 3. Further, Dr. Singh observed that while petitioner "shed a few tears as he told [his] story, this appeared contrived. He appeared to have very limited insight into his sexual offending or empathy for his victims." *Id.* Ex. J at 3. Moreover, Dr. Singh found that

> a genuine commitment not to re-offend in the future remains elusive. In addition, problems recognizing and regulating his emotions and sexual feelings, such as coping with negative affect through aggression or sexual fantasies remain problematic. [Petitioner]'s sexual behavior in the free community demonstrates extremely weak coping abilities. Although he participates in treatment and appears motivated to change, his behavior suggests quite the opposite. As a result he remains unable to avoid sexually offending behavior in the future.

*Id.* Ex. J at 8.

Petitioner argues that Dr. Singh's assessment "was inaccurate and unprofessional," because: (1) he concluded that petitioner's risk for potential violence in the community was *low*, but that petitioner's risk for committing sexual violence is *high*; (2) he failed to consider petitioner's age and medical condition; and (3) he stated that petitioner "has had many years of therapeutic intervention," which, petitioner asserts, is not true. *Id.* at 15. Petitioner concludes that "[a] general review of the evaluation strongly suggests Dr. Singh approached the interview and evaluation with a bias against petitioner []." *Id.* at 16. While Dr. Singh's report is certainly unfavorable toward petitioner, petitioner's assertions do not support a finding that the report is unreliable. No reason appears in the record why the Board should not consider the report as probative to its inquiry. Moreover, the conclusions that petitioner's risk for violence is low but that his risk of committing sexual violence is high, are not inconsistent. *See id.* Ex J at 8 (referring to a general violent offense as opposed to a sexual offense). Additionally, the report notes petitioner's age and illness, which is discussed in more detail below. *Id.* Ex. J at 1, 5. Finally, petitioner acknowledges that he received at least three years of therapy prior to the commitment offense, and since then, has participated in various self-help activities. *Id.* at 7, 15 (including Narcotics Anonymous, Alcoholics Anonymous, the Prison Outreach Program, and

anger- and stress-management programs). Because Dr. Singh's assessment suggests that petitioner would pose an unreasonable risk to society if released on parole, and the Board properly considered his opinion, which is certainly probative of the issue, "some evidence" supports the Board's finding.

Petitioner also insists that the Board demanded he receive psychotherapy for his sexual disorders, knowing that psychotherapy is unavailable in the institutional setting, thereby violating his right to due process because "it strips him of his statutory right to earn parole by compliance with the demands and recommendations of the Board."[7] *Id.* at second page 2, second page 4, 12, 14; P. & A. at 11-15. In essence, petitioner contends that the Board has established an impossible precursor to parole. Pet. at 14. If the Board had conditioned a grant of parole on petitioner's participation in therapy that it knew was unavailable to petitioner, then due process concerns might arise. However, such a demand would not negate the Board's distinct finding that petitioner would pose an unreasonable risk to society if released. More to the point, however, the Board made no such demand upon petitioner. In discussing petitioner and his potential need for therapy, the Board stated:

> We're also going to ask the doctor if there is the need for any therapy with the issue of the sexual [sic]. I don't know if that's been done before, but we're going to ask that question, also.

*Id.* Ex. D at 84. The Board continued:

> The recent psychological exam dated April of 2007 authored by Dr. Singh indicates a longer period of observation and evaluation. Therefore, a longer period of observation and evaluation is going to be required before the Board can find that you're suitable for parole.

> We're going to recommend that you continue to do what has been your strong suit, and that is to remain disciplinary-free. Continue to participate in the self-help, and most certainly cooperate with the clinician when it comes time for you next exam.

---

[7] In support of his argument, petitioner references transcripts from Board hearings that occurred prior to the 2007 hearing. P. & A. at 11-12. However, petitioner does not challenge those decisions and there is no indication that the panel at the 2007 hearing relied upon petitioner's alleged need for psychotherapy in making the decision at issue.

*Id.* Ex. D at 87. Petitioner's argument that the Board imposed an impossible precursor to parole is not supported by the record and is without merit.[8] The argument is further undercut by the findings in Dr. Singh's psychological report, which states:

> [Petitioner] is adamant that he needs to be involved in individual psychotherapy. However, the record indicates that he has not made much progress despite having many years of therapeutic intervention. It is this evaluator's opinion that [petitioner] does not currently present as a good candidate for any noteworthy change as a result of psychotherapeutic intervention. But bibliotherapy, and involvement in self-help groups, may be options.

*Id.* Ex. J at 9. While petitioner asserts that Dr. Singh's suggestion is "disingenuous," petitioner has not demonstrated that the report is unreliable, as discussed above. *Id.* at 12-13, n. 5.

The Board also found that the nature of the commitment offense weighed against granting parole, because the offense was carried out in an "especially cruel and callous manner" in that "the offense was carried out in a very dispassionate and calculated manner," and the offense was committed in a manner that demonstrated "a callous disregard for human suffering." *Id.* Ex. D at 81-82; *see also* Cal. Code Regs. tit. 15, § 2281(c)(1).[9] While petitioner argues he merely exercised "poor judgment" and that his conduct was not "so egregious," there is evidence to support the Board's finding. Pet. at 20. *See In re Weider*, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the factors beyond the minimum elements of the crime "must be predicated on 'some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction--indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public

---

[8] Given the factual inaccuracy underlying petitioner's argument, the court need not address petitioner's Eighth Amendment and equal protection claims, both of which are premised on the same factual error. *See* Pet. at 14; P. & A. at 14, 20-22.

[9] Petitioner argues that § 2281(c)(1) "was originally developed for crimes of serious violence, not for sex offenses," and "is an inappropriate and inadequate standard for assessing a [sex] offender's parole eligibility." Pet. at 18-19. This argument is foreclosed by § 2432(b), which specifically requires that the Board, in assessing the parole eligibility of a sex offender, consider the circumstances tending to show unsuitability listed in § 2281(c). Cal. Code Regs. tit. 15, § 2432(b).

safety.'") (citation omitted). In finding that "some evidence" supports the Board's finding that the commitment offense was carried out in an especially cruel manner, the superior court stated:

> [p]etitioner knew he had a problem at that time, but went on a group outing that violated the terms of the parole conditions he was under at the time of the commitment offense, allowed himself to be entrusted with three children, and . . . disregarded the long-term impact of the victims of the crime. In this case, the published opinion of the Court of Appeal, First District, Division One, affirming the convictions and sentence provides reliable evidence in support of the Board's summary of the offense. (See *People v. Levesque* (1995) 35 Cal.App.4th 530.) In addition, at the parole suitability hearing, Petitioner admitted that he was grooming his child victims for further molestation.

Pet., Ex E at 3-4. The Board also noted that petitioner's victims were young, and "[y]oung victims are usually trusting, but probably especially trusting when they're left in [petitioner's] care by their parents." *Id.* Ex. D at 86.

Another reason for the Board's decision was petitioner's previous record for "violence and assaultive behavior," an "escalating pattern of criminal conduct" based on his criminal record, and an unstable social history. *Id.* Ex. D at 82. There is evidence supporting these factors as well, which the superior court summarized:

> Petitioner was 35 years old at the time of the commitment offense. At that point, he had an adult record that included a prior conviction for indecent exposure in 1981 for which he received probation, which was revoked once. Notably, the investigation involved with that conviction revealed, and petitioner admitted, that he had previously exposed himself to other victims. In 1985 he pled guilty to another § 288(a) offense involving a five-year-old female victim, for which he received five years probation on the condition that he was not to be in the company of any minor under the age of 18 years. That probation was revoked because in 1986 Petitioner suffered a rape and first degree burglary conviction. The 1986 crimes involved the forcible rape of an adult female where Petitioner used scissors to cut off her clothing. Petitioner was sentenced to eight years state prison on the rape and the sentence on the burglary was stayed. Petitioner admitted molesting his sisters and his own daughter. Petitioner was on parole when he committed the commitment offense.

*Id.* Ex. E at 4. Based on this evidence, the Board concluded that petitioner had "failed previous grants of probation and parole and can't be counted upon to avoid criminality, and that [petitioner] also failed to profit from society's previous attempts to correct the criminality. And those attempts included the probation, parole and the prior prison terms." *Id.* Ex. D at 83. The

evidence regarding petitioner's prior offenses supports the Board's determination that petitioner presents a risk of danger to society if released.

Petitioner argues that his prior offenses and social instability are insufficient to warrant denial of parole in the present circumstances. P. & A. at 18-20. Continued reliance on an unchanging factor to deny parole, such as the circumstances of the offense and conduct prior to imprisonment, could at some point result in a due process violation. *Irons*, 505 F.3d at 853; *Sass*, 461 F.3d at 1129; *Biggs*, 334 F.3d at 916. Here, however, petitioner's claim is weakened by the fact that at the time of the 2007 hearing, he had not yet served his minimum sentence. More importantly, the Board did not rely solely on petitioner's prior offenses and social instability, but also relied on the negative psychological report to make its assessment.

Petitioner further contends that the Board failed to consider all relevant information in denying him parole, including his medical condition and various statutory safeguards that would minimize his threat to society if released. Pet. at 11-13, 14-15; P. & A. at 16-18, 22-24. The superior court rejected this argument:

> Contrary to Petitioner's assertion, the record reveals that the Board gave individualized consideration to all relevant factors. The Board's decision goes into detail as to many favorable circumstances in support of parole, and also considered Petitioner's illness, and is not required to specify in detail every pertinent fact relied upon. (See [*In re Elkins* (2006) 144 Cal.App.4th 475,] 492, fn. 4). Despite the positive factors, the Board felt that these did not outweigh the factors tending to show unsuitability for release on parole.

Pet., Ex E at 3. Indeed, the Board considered numerous circumstances favoring petitioner's suitability for parole, including petitioner's vocational training, lack of disciplinary reports, participation in various self-help activities, and efforts to establish tenable parole plans. *Id.* Ex. D at 27, 35-36, 83-85. Nonetheless, the Board considered those positive factors insufficient to outweigh the factors disfavoring parole and was entitled to make its determination accordingly.

Regrettably, petitioner suffers from end-stage liver cirrhosis. *Id.* at 14. Petitioner asserts that his medical condition alone "demonstrates that he no longer could pose a risk of reoffending." *Id.* However, the evidence presented to the Board, including a physician's report

discussing petitioner's illness, does not demand the conclusion that petitioner's medical condition "render[s] him medically incapable of being a risk to public safety." *Id.* at second page 5, Ex. I. It may be that in the two years since the 2007 hearing, petitioner's health has deteriorated such that he no longer poses a threat to the public. The issue raised in this petition, however, is whether some evidence supports the Board's decision. As discussed, it does. The changed circumstances regarding petitioner's health ought to be presented to the Board at petitioner's next parole hearing, and not in the instant challenge to the Board's 2007 decision.

In sum, the Board's finding that petitioner currently poses a threat to public safety is supported by "some evidence." Accordingly, the state court's evaluation of petitioner's claim did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."[10] 28 USC § 2254(d).

III. Evidentiary Hearing

Petitioner requests an evidentiary hearing. Pet. at 21. However, petitioner fails to explain the legal basis for his entitlement to such a hearing. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005) ("[F]or a post-AEDPA petitioner to receive an evidentiary hearing in federal court, he must first show that he has not failed to develop the factual basis of the claim in the state

_____

[10] Petitioner's superior court petition for writ of habeas corpus was heard and decided by that court several months before the California Supreme Court issued its decisions in *Lawrence* and its companion case, *In re Shaputis*, 44 Cal.4th 1241 (2008). Petitioner argues that the superior court's application of the "some evidence" standard was contrary to the application of that standard as subsequently clarified in *Lawrence* and *Shaputis*. Pet. at 8, 9, 16. As stated herein, in reviewing a decision by the Board to deny parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the Board that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *In re Lawrence*, 44 Cal.4th at 1212 (citing *In re Rosenkrantz*, 29 Cal.4th at 658; *In re Dannenberg*, 34 Cal.4th at 1071; *In re Lee*, 143 Cal.App.4th 1400, 1408 (2006)). Here, as discussed above, the superior court specifically found that "some evidence" supports the Board's decision that petitioner currently poses an unreasonable risk of danger to society if released. Thus, petitioner's argument is without merit.

courts: if he has failed, he must meet one of the two narrow exceptions stated in the statute. *See* 28 U.S.C. § 2254(e)(2)(A) - (B). Then he must meet one of the [*Townsend v. Sain*, 372 U.S. 293 (1963)] factors and make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief."). Furthermore, an evidentiary hearing is not required where, as here, the relevant issues can be resolved with reference to the state record before the court and petitioner has not alleged facts, which, if proven, would entitle him to habeas relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Therefore, the undersigned recommends that petitioner's request for an evidentiary hearing be denied.

IV.     Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's motion to supplement the petition be denied;

2. Petitioner's request for an evidentiary hearing be denied; and

3. Petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 20, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE